**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JASMINE T. J.,[1]

     Plaintiff,

          v.                            CIVIL NO. 3:20cv74

ANDREW M. SAUL,[2]
Commissioner of Social Security,

     Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disabled adult child benefits and supplemental security benefits under the Social Security Act. Jasmine T. J. ("Plaintiff"), twenty-two years old at the time of her benefits application, has a high school education and previously worked as a housekeeper and as a server on a part-time basis. (R. at 79-80.) Plaintiff suffers from depressive disorder, anxiety/agoraphobia/social anxiety disorder, obsessive-compulsive disorder, and body dysmorphic disorder. (R. at 21.) Plaintiff asserts that her mental health issues significantly impact her ability to perform work-related activities, like interacting with the public, supervisors, and coworkers, and appropriately responding to normal work stressors. (R. at 44-46.)

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

On September 29, 2015, Plaintiff applied for disabled adult child benefits and supplemental security income under the Act. (R. at 18.) After Plaintiff's application was denied, and after exhausting her administrative remedies, Plaintiff seeks review of the Administrative Law Judge's ("ALJ") decision. This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff argues that the ALJ erred in his finding that Plaintiff is "not disabled." Plaintiff contends that the ALJ (1) improperly evaluated the opinion presented by Dr. Ely Sapol and formulated a residual functional capacity not supported by substantial evidence, and (2) violated the treating source rule by failing to provide "good reasons" for assigning less than controlling weight to the opinions of Dr. Adelaide Simpson and Dr. Una McCann. (Pl.'s Brief in Support of Pl.'s Mot. For Summ. J. at 7, 11, ECF No. 14 ("Pl.'s Mem.").)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On September 29, 2015, Plaintiff filed for disabled adult child benefits and supplemental security income, alleging disability due to depressive disorder, anxiety/agoraphobia/social anxiety disorder, obsessive-compulsive disorder, and body dysmorphic disorder, with an alleged onset date

---

[3]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

of June 30, 2015. (R. at 18, 21.) The Social Security Administration denied Plaintiff's claim initially on December 29, 2015. (R. at 18.) Plaintiff requested a hearing before an ALJ, and a hearing was held on October 19, 2017. (R. at 18.) At the hearing, the ALJ determined that the record lacked some of Plaintiff's most recent medical treatment records and found reason to schedule a psychological consultative examination to assess Plaintiff's functional limitations. (R. at 18.) After undergoing a consultative examination with Dr. Faye Romano, Plaintiff appeared and testified at a hearing on July 18, 2018. (R. at 18.) On August 7, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 18-32.) Plaintiff requested review of the ALJ's decision, and on December 9, 2019, the Appeals Counsel issued a decision, finding that Plaintiff was not disabled. (R. at 4-7.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015)

3

(quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

To receive disabled adult child benefits, a claimant must show that she is the unmarried child of an individual who was entitled to old-age or disability benefits, that she was dependent on the insured individual, that she is eighteen years or older, and has a disability that began before she became twenty-two years old. 20 C.F.R. § 404.350(a). To determine whether a disability exists, Social Security Administration regulations set forth a five-step process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On July 18, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, Plaintiff's father, and a vocational expert testified. (R. at 42-86.) On August 7, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 18-32.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 18-32.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 30, 2015. (R. at 21.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder, anxiety/agoraphobia/social anxiety disorder, obsessive-compulsive disorder, and body dysmorphic disorder. (R. at 21.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including the testimony of Plaintiff and her father; the findings of

5

treating and examining health care providers, including those provided by Drs. Sapol, McCann, and Simpson; Plaintiff's medical record; and statements provided by prior employers. (R. at 23-30.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant is limited to perform simple, routine tasks and is able to concentrate in the workplace for periods of two hours on work related tasks before requiring a break. She can have occasional interaction with supervisors, co-workers and no interaction with the general public. She can frequently respond appropriately to changes in a routine work setting. She is limited to tasks that do not require production rate pace, but rather goal oriented work. The claimant can work in proximity with co-workers, but interaction is not required to complete tasks.

(R. at 23.)

At step four, the ALJ considered whether Plaintiff could perform her past relevant work, based on the residual functional capacity determination. Work experience means skills and abilities the claimant has acquired through work the claimant has done, which shows the type of work the claimant may be expected to do. §§ 404.1565, 416.965. If, however, the claimant has no work experience or worked only "off-and-on" or for brief periods of time during the last fifteen years, the Social Security Administration "generally consider[s] that these do not apply." *Id.* In the instant case, Plaintiff previously worked as a housekeeper and as a server, but only remained employed in these positions for brief periods of time. (R. at 44, 62-64, 70-71.) The ALJ therefore determined that Plaintiff had no past relevant work. (R. at 30.)

At step five, however, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 30.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff would be able to perform the requirements of representative occupations such as laundry worker, marker, and cleaner. (R. at 31.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional

capacity, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 31.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate.

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred by: (1) improperly evaluating the opinion of Dr. Sapol; and (2) violating the "treating physician rule" by failing to articulate reasons for according less than controlling weight to the opinions of Drs. Simpson and McCann. (Pl.'s Mem. at 7, 11-12.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ Did Not Err in Evaluating Dr. Sapol's Opinion in Determining Plaintiff's Residual Functional Capacity.

After step three of the ALJ's analysis, but before making a determination whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. 20 C.F.R. §§ 404.1545(a), 416.945(a). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.945(a)(1)). In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's mental and physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. §§ 404.1545(b)-(c), 416.945(b)-(c). The residual functional capacity must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. §§ 404.1529(a), 416.929(a). Moreover, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) (stating that the residual functional capacity "assessment must be

based on *all* of the relevant evidence in the case record") (emphasis added). A residual functional capacity determination is reserved for the ALJ alone. §§ 404.1527(d), 416.927(d).

Plaintiff first challenges the ALJ's analysis of the opinions presented by Dr. Sapol, who conducted a psychological consultative examination of Plaintiff on December 22, 2015. (R. at 559-63.) In his residual functional capacity determination, the ALJ reviewed the medical opinions of treating and examining physicians, including the psychological assessment provided by Dr. Sapol. (R. at 27, 30, 559-63.) Dr. Sapol found that Plaintiff demonstrated fluent speech and adequate language, intact attention and concentration, normal recent and remote memory skills, appropriate cognitive functioning, and proper orientation to person, place, and time. (R. at 27, 559-63.) Dr. Sapol found that Plaintiff was mildly or moderately impaired in her ability to understand, remember, and carry out instructions, and markedly impaired in her ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in a routine work setting. (R. at 27, 564-65.)

Plaintiff argues that the ALJ took inconsistent positions by devaluing Dr. Sapol's opinion after finding that additional limitations—not present in Dr. Sapol's opinion—were needed, but then ultimately crafting a residual functional capacity that was less restrictive then the limitations suggested by Dr. Sapol. (Pl.'s Mem. at 8.) Thus, argues Plaintiff, the ALJ's residual functional capacity formulation "runs contrary" to the explanation provided by the ALJ when weighing Dr. Sapol's opinion. (Pl.s' Mem. at 7, 10.) Further, Plaintiff contends that the ALJ failed to provide an explanation for this alleged inconsistency. (Pl.'s Mem. at 8.) Defendant responds that the ALJ properly evaluated and explained his assessment of Dr. Sapol's opinion. (Def.'s Mot. Summ. J. & Br. in Supp. Thereof at 14, 19, ECF No. 15 ("Def.'s Mem.").)

1. The ALJ Properly Evaluated Dr. Sapol's Opinion.

The Court first addresses Plaintiff's principal argument concerning the ALJ's evaluation of Dr. Sapol's opinion in comparison to Plaintiff's residual functional capacity determination. Plaintiff identifies two "problematic" inconsistencies between the ALJ's evaluation of Dr. Sapol's opinion and the ALJ's formulated residual functional capacity. (Pl.'s Mem. at 9-10.) First, Plaintiff underscores that Dr. Sapol opined that Plaintiff was *markedly impaired* in her ability to interact with supervisors, co-workers, and the public, while the residual functional capacity provides that the Plaintiff "can have *occasional interaction* with supervisors, co-workers and no interaction with the general public." (Pl.'s Mem. at 9; R. at 23 (emphasis added).)[4] Second, Plaintiff argues that the ALJ failed to incorporate Dr. Sapol's opinion that Plaintiff was markedly limited in her ability to respond appropriately to work stressors, since Plaintiff's residual functional capacity does not account for such limitations. (Pl.'s Mem. at 10.) Plaintiff avers that such "glaring" inconsistencies

---

4       The Social Security Administration employs a five-point rating scale in evaluating the effects of a claimant's mental disorder on mental functioning ability, including a claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself. 20 C.F.R. § Pt. 404, Supt. P, App. 1, 12.00(F)(2)(a)-(e). The scale provides the following ratings:

> a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
>
> c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
>
> d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

*Id.*

are problematic because, while the ALJ "expressly determined that Dr. Sapol's opinions were being discredited because greater limitations were necessary," the ALJ then "turned around and created a residual functional capacity that was far less restrictive." (Pl.'s Mem. at 9-10.)

Plaintiff's arguments are unavailing both factually and substantively. Factually, the ALJ *did* include greater limitations in Plaintiff's residual functional capacity than suggested by Dr. Sapol. For example, Plaintiff's residual functional capacity limits Plaintiff to "tasks that do not require production rate pace," a limitation Dr. Sapol does not suggest in her assessment. (R. at 23, 27.) Further, the residual functional capacity limits Plaintiff to two-hour periods of concentration before requiring a break, while Dr. Sapol's opinion does not provide for any limitations in Plaintiff's concentration. (R. at 23, 27.) The ALJ, therefore, did include additional limitations in Plaintiff's residual functional capacity and the ALJ's residual functional capacity formulation is not generally less restrictive than Dr. Sapol's opinion.

Substantively, the ALJ did not err by failing to include all of the restrictions provided by Dr. Sapol. An ALJ is to consider *all* of the relevant evidence in the record. SSR 96-8p. When medical opinions of treating physicians are inconsistent with each other, the ALJ must evaluate and assign differing weight to properly analyze the evidence involved. §§ 404.1527(c)(2), (d), 416.927(c)(2), (d). The "more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." §§ 404.1527(c)(4), 416.927(c)(4). The ALJ is not bound by medical opinions in the record and alone is tasked with the responsibility to determine a claimant's residual functional capacity. *See Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, *4 (4th Cir. Jan. 11, 1999). Here, the ALJ crafted Plaintiff's residual functional capacity after weighing the medical opinions in the record, including Dr. Sapol's opinion, as well as Plaintiff's reported activities. (R. at 22-30.)

Regarding Plaintiff's interactions with others, Dr. Sapol opined that Plaintiff was markedly impaired in her ability to interact appropriately with supervisors, co-workers, and the public. (R. at 565.) Despite this opinion, the ALJ formulated Plaintiff's residual functional capacity to include: occasional interaction with supervisors and co-workers; no interaction with the general public; and further provided that Plaintiff can work in proximity with co-workers, but interaction was not required to complete tasks. (R. at 23.)

The ALJ underscored Plaintiff's ability to grocery shop and shop for clothing for hours, engage with others at doctor's offices and stores, go to the movies with a friend monthly, and communicate with others on the phone. (R. at 22, 291-93.) The ALJ also noted Plaintiff's excursions, including attending the Boo at the Zoo event at the National Zoo with her cousin and viewing the light parade in the Baltimore harbor. (R. at 22, 53-55.) Further, Plaintiff uses phone applications like "Meet Me" to make friends and meet up with strangers, and occasionally uses online dating applications. (R. at 56, 69-70.) Plaintiff also indicated in the Function Report that she gets along with authority figures. (R. at 297.) Additionally, the ALJ considered a report submitted by Plaintiff's manager at Lincoln University, who indicated that Plaintiff "works well with supervisors." (R. at 24, 254-55.) The ALJ further noted that Plaintiff "demonstrated no abnormal social behaviors during the hearing and the medical evidence shows that the claimant demonstrated no abnormal social behaviors during appointments." (R. at 22, 26.)

In reviewing Plaintiff's ability to interact with others, the ALJ also compared Dr. Sapol's opinion with the opinions rendered by other treating physicians. (R. at 26-30.) Dr. Romano, whose opinion the ALJ assigned significant weight, opined that Plaintiff's ability to interact with coworkers and the public was mild to moderately impaired, though noted that Plaintiff was a "cordial individual, who maintained cordial interaction" during the examination, was

"cooperative," and "participated well in the assessment." (R. at 29, 590-94.) Dr. Romano evaluated Plaintiff on February 5, 2018, over two years after Dr. Sapol conducted her examination and only five months prior to Plaintiff's hearing. (R. at 18, 27-28, 559, 590.) The ALJ found Dr. Romano's opinion to be well-supported by and consistent with the overall evidence of record, including Plaintiff's testimony, mental status examination findings, diagnoses, treatment, and prescribed medication. (R. at 29.) For these reasons, the ALJ ultimately assigned more weight to the opinion rendered by Dr. Romano than that rendered by Dr. Sapol.

Despite the evidence underscoring Plaintiff's social capabilities, outlined above, the ALJ still considered Plaintiff's difficulties in interacting with others when formulating Plaintiff's residual functional capacity. (R. at 23-30.) The ALJ heard testimony from Plaintiff and her father regarding Plaintiff's difficulties getting along with coworkers and supervisors (R. at 48-49, 63-64, 70-71.) To account for such difficulties, the ALJ included certain restrictions in Plaintiff's residual functional capacity, like providing for only "occasional interaction with supervisors [and] co-workers . . . no interaction with the general public," and did not require interaction with co-workers to complete tasks. (R. at 23.)

Although Dr. Sapol provided for more restrictions regarding Plaintiff's interactions with others, the ALJ is not bound by the opinion of one examining physician. Rather, it is the ALJ alone who formulates a residual functional capacity determination, given *all* of the medical evidence in the record. *See* §§ 404.1527(d), 416.924(d); *Craig*, 76 F.3d at 594-95; *see also* SSR 96-8p. Therefore, the ALJ did not err by failing to include the exact restrictions provided by Dr. Sapol regarding Plaintiff's interactions with others.

Regarding Plaintiff's ability to respond appropriately to work stressors, the ALJ considered the opinions of multiple medical providers and weighed such evidence with Plaintiff's testimony

and other medical records. While Dr. Sapol opined, in 2015, that Plaintiff was markedly impaired in her ability to respond to changes in a routine work setting, other medical opinions suggested less limitations. (R. at 114, 565, 590-94.) The opinions submitted by the State agency medical consultants, to which the ALJ assigned partial weight, found that Plaintiff could sustain an ordinary routine and adapt to routine changes without special supervision. (R. at 26-27, 114.) Dr. Romano, who examined Plaintiff in 2018, found that Plaintiff would not have difficulty performing simple and repetitive tasks and should be able to complete some detailed and complex tasks under supervision. (R. at 28-29, 590-94.) Dr. Romano opined that Plaintiff's ability to cope with routine stressors encountered in competitive work did appear to be mild to moderately compromised, but that her prognosis "would be more favorable if the claimant were to engage in counseling." (R. at 593.) The ALJ found Dr. Romano's opinion to be "well-supported by and consistent with the level of limitation in the residual functional capacity finding, as well as the overall evidence of record, including claimant's testimony, mental status examination findings, diagnoses, treatment, and prescribed medications." (R. at 29.) The ALJ ultimately assigned significant weight to Dr. Romano's opinion. (R. at 29.)

Dr. Sapol's opinion regarding Plaintiff's ability to respond to work stressors from her 2015 evaluation was inconsistent with other medical opinions, including those from evaluations conducted shortly before Plaintiff's hearing. "We must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." *Dunn*, 607 F. App'x at 271 (citing *Hancock*, 667 F.3d at 472). As already noted, in reviewing whether substantial evidence supports the findings of the ALJ, "we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig*, 76 F.3d at 589) (alteration in original). Substantial evidence supports the ALJ's

decision to assign greater weight to Dr. Romano's opinion and ultimately craft a residual functional capacity that incorporates Dr. Romano's, and not Dr. Sapol's, opinion regarding Plaintiff's ability to respond to work stressors.

Here, the ALJ was not necessarily bound by every opinion rendered by Dr. Sapol. The ALJ assigned some weight to Dr. Sapol's opinion and crafted a residual functional capacity that best reflected all of the evidence in the record. Accordingly, the ALJ did not err.

2. The ALJ Adequately Explained His Evaluation of Dr. Sapol's Opinion.

The Court next addresses whether the ALJ adequately explained his evaluation of Dr. Sapol's opinion. The residual functional capacity assessment must include a narrative discussion describing how the evidence supports each conclusion. *Mascio*, 780 F.3d at 636. "To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Comm'r*, No. 19-1540, 2020 WL 7331494, at *6 (4th Cir. 2020) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

In formulating Plaintiff's residual functional capacity, the ALJ assigned varying levels of weight to the medical opinions rendered, based on the other evidence in the record, including Plaintiff's testimony and reported daily activities, Plaintiff's mental status examination findings, diagnoses, treatment, and prescribed medications. (R. at 26-29.) As discussed above, the ALJ assigned some weight to Dr. Sapol's opinion, explaining that the opinion is "partially consistent with the treatment records" but ultimately deciding that "additional limitations are needed as indicated in the residual functional capacity." (R. at 27.) The ALJ included a narrative discussion describing how the evidence supports his conclusions, citing medical evidence, including physician opinions, and nonmedical evidence, such as Plaintiff's reported daily activities and testimony from the hearing. (R. at 23-30.) The ALJ identified evidence that supported his

conclusion and built "an accurate and logical bridge from [that] evidence to [his] conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The ALJ ultimately crafted a residual functional capacity limiting Plaintiff to "simple, routine tasks . . . for periods of two hours . . . before [requiring] a break"; "occasional interaction with supervisors, co-workers and no interaction with the general public"; and "tasks that do not require production rate pace, but rather goal[-]oriented work." (R. at 23.) While not all of the above limitations were specifically expressed in Dr. Sapol's opinion, the ALJ relied on "all the relevant evidence in [the] case record" in crafting Plaintiff's residual functional capacity. §§ 404.1545(a), (c), 416.945(a), (c). Accordingly, the ALJ did not err.

### B. Substantial Evidence Supports the ALJ's Assignment of Weight to the Opinions of Plaintiff's Treating Physicians.

Plaintiff argues that the ALJ "failed to provide the requisite good reasons supported by substantial evidence for not according controlling weight" to the opinions and findings of Plaintiff's treating physicians. (Pl.'s Mem. at 11.) Specifically, Plaintiff avers that the ALJ incorrectly assigned "little" weight to the opinions of Drs. Simpson and McCann and provided only a "cursory rationale" for doing so. (Pl.'s Mem. at 12-13.) Defendant responds that substantial evidence supports the ALJ's evaluation of the opinions of Drs. Simpson and McCann, and that the ALJ adequately explained how he evaluated the medical opinions. (Def.'s Mem. at 21.)

In analyzing expert evaluations during the sequential analysis, a treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques. §§ 404.1527(c)(2), 416.927(c)(2); *Craig*, 76 F.3d at 590; SSR 96-2p, 1996 WL 374188 (July 2, 1996). The opinions of treating physicians are given more weight, in part, because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. §§ 404.1527(c)(2),

15

416.927(c)(2). However, the regulations do not require the ALJ to accept opinions from a treating physician when the physician's opinion is inconsistent with other evidence or when it is not otherwise well supported. §§ 404.1527(c)(2), (d)(3), (e), 416.927(c)(2), (d)(3), (e); *see also Arakas*, 2020 WL 7331494, at \*17 ("[A treating physician's] opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record.").

If a physician's opinion is "not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Further, the regulations do not require that the ALJ accept opinions from a treating source in *every* situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment—an issue reserved for the Commissioner—or when the opinion otherwise lacks support. §§ 404.1527(c), (d), 416.927(c), (d). Generally, a reviewing court should not disturb an ALJ's decision regarding the weight given to a medical opinion "absent some indication that the ALJ has dredged up 'specious inconsistences,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). An ALJ's decision regarding weight afforded to a medical opinion "should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded." *Keaton v. Colvin*, Civ. No. 3:15cv588, 2016 WL 8452663, at \*4 (E.D. Va. July 11, 2016); §§ 404.1527(d), 416.927(d).

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering the following "non-exclusive list": (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between

the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. §§ 404.1527(c), 416.927(c); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson*, 434 F.3d at 654).

In formulating Plaintiff's residual functional capacity, the ALJ in the instant matter reviewed testimony of Plaintiff and her father; statements provided by lay witnesses, including Plaintiff's previous manager; Plaintiff's reported daily activities; medical evidence, including psychological assessments, physician treatment notes, and prescribed treatment; and opinion evidence, rendered by several different treating or examining physicians, including Drs. Simpson and McCann. (R. at 24-30.) The ALJ assigned varying weights to the physicians' opinions, depending on how consistent such opinions were with other physician opinions, treatment records, Plaintiff's alleged symptoms, and Plaintiff's reported daily activities. (R. at 24-30.) The ALJ considered the physicians' length of treating relationship with Plaintiff and whether the opinions rendered were supported by evidence or were conclusory in nature. (R. at 28-30.) After reviewing the opinions rendered by Drs. Simpson and McCann, and comparing the opinions to the record as a whole, the ALJ assigned little weight to both opinions. (R. at 28-30.)

Dr. Simpson treated Plaintiff for a period of three months—from March 27, 2018 through June 26, 2018. (R. at 30, 603-13, 729-31.) In psychological assessments completed by Dr. Simpson, she indicated that Plaintiff was mainly housebound due to her social anxiety, would need long-term therapy and medication, was not able to support herself because of her mental health condition, and had marked restrictions in the following areas: activities of daily living, maintaining social functioning, and concentration, persistence, or pace. (R. at 29, 603-13, 729-31.) Dr. Simpson also noted that Plaintiff appeared neat and clean, made good eye contact, was cooperative and fully

17

alert, displayed normal memory, had an average intellectual level, and exhibited fair judgment. (R. at 610, 612-13.)

Dr. McCann treated Plaintiff at Johns Hopkins in 2014.[5] (R. at 547, 550, 570.) On February 8, 2016, Dr. McCann completed a mental assessment questionnaire. (R. at 28, 568.) Dr. McCann found that Plaintiff was moderately impaired in her ability to understand, remember, and carry out simple instructions and markedly impaired in her ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions. (R. at 28, 568.) Dr. McCann opined that Plaintiff has chronic, severe social anxiety disorder, panic disorder with agoraphobia, major depressive disorder, obsessive compulsive disorder, and borderline intellectual functioning. (R. at 568.) Dr. McCann further found that Plaintiff's psychiatric symptoms interfere with her short-term and longer-term memory and impair her critical thinking and judgment abilities. (R. at 570.) Dr. McCann, however, found Plaintiff's ability to interact with supervisors, co-workers, and the public, as well as her ability to respond to changes in a routine work setting, not to be affected by her impairments. (R. at 570.)

Dr. McCann again treated Plaintiff on December 20, 2016 and noted that Plaintiff continued to have symptoms of anxiety but had been "meeting men" online. (R. at 583-84.) Dr. McCann noted that Plaintiff presented as "[a]nxious/smiling but quiet," displayed a "[g]oal-directed" thought process but showed poor "judgment/insight." (R. at 584.) On April 5, 2017, Dr. McCann saw Plaintiff for her "termination visit." (R. at 581-82.) At her appointment, Plaintiff

---

[5]    Dr. McCann treated Plaintiff for a period in 2014, prior to Plaintiff's alleged onset date of June 30, 2015. Because the ALJ did not give any weight to statements regarding limitations prior to Plaintiff's alleged onset date, the Court will not review Plaintiff's 2014 treatment with Dr. McCann in detail. (R. at 28.)

stated that she continued to have social anxiety but was not taking any medications and did not participate in any cognitive behavioral therapy "because she 'couldn't find' a therapist in DC." (R. at 581.) In a letter dated April 5, 2017, Dr. McCann asserted that Plaintiff "continues to be disabled by her psychiatric symptoms." (R. at 28, 575.)

The ALJ afforded little weight to the opinions of Drs. Simpson and McCann. (R. at 28-30.) The ALJ acknowledged Dr. Simpson's treating, albeit brief, relationship with Plaintiff, but ultimately found that her evaluation regarding Plaintiff's functioning to be somewhat inconsistent with the medical evidence of record. (R. at 30.) While Dr. Simpson opined that Plaintiff had a marked restriction of activities of daily living, the ALJ ultimately assigned greater weight to Plaintiff's reported daily activities and examination findings, "which the undersigned found to be consistent." (R. at 30.) The ALJ found Dr. Simpson's limitations to be "extreme" and not supported by the record, including Plaintiff's relatively conservative treatment of intermittent medication and therapy. (R. at 30.) Finally, the ALJ considered Dr. Simpson's three-month treating relationship and accordingly, assigned Dr. Simpson's opinion little weight. (R. at 30.)

According to the ALJ, like Dr. Simpson, Dr. McCann "somewhat overstate[d] the claimant's limitations compared to what is indicted by the claimant's treatment during the period at issue." (R. at 28.) While Dr. McCann noted that Plaintiff was "profoundly affected by her disorders and was unable to function independently in a school or work setting," the ALJ found this to be inconsistent with Plaintiff's reported daily activities, which included shopping for hours; taking care of a pet; performing household chores for hours at a time, like cleaning the house, washing the dishes, doing laundry, vacuuming, watering plants, and cutting the grass; preparing meals for two to three hours at a time; meeting strangers online; and attending social excursions like the Boo at the Zoo event and the harbor parade in Baltimore. (R. at 22-26, 28, 52-59, 292-96.)

19

Further, despite Plaintiff's allegedly profound limitations, Dr. McCann concluded that Plaintiff had *no* limitations in interacting appropriately with supervisors, co-workers and the public, a finding that is inconsistent with the medical record. (R. at 28, 570.)

The ALJ adequately explained his reasons for affording the opinions of Drs. Simpson and McCann little weight, pointing to specific categories of evidence in the record that contradicted the conclusions of Drs. Simpson and McCann. The ALJ concluded that the physicians' opinions were not entirely supported by the record, including Plaintiff's examination findings and reported daily activities outlined above. (R. at 28-30.) Further, the ALJ found the limitations expressed by Drs. Simpson and McCann to be overstated "compared to what is indicated by the claimant's treatment during the period at issue." (R. at 28.) The ALJ discussed Plaintiff's intermittent use of medication, underscoring a treatment provider's note that Plaintiff "recognized that not being on her medication for the past month had negatively impacted her mood and her ability to regulate her emotions effectively." (R. at 25.) The ALJ also reviewed Plaintiff's noninvasive, "conservative" treatment, which included prescribed medication treatment and individual therapy. (R. at 26.) The ALJ noted that medication was "relatively effective in controlling [Plaintiff's] symptoms when she was compliant with treatment" and observed that Plaintiff "has not required aggressive or frequent physician intervention or any hospitalizations related to mental health symptoms." (R. at 26.) Further, the ALJ opined that, despite Plaintiff's mental health impairments, "there is no evidence that her impairments cannot be controlled or remedied with medication and appropriate treatment." (R. at 26.)

Additionally, the ALJ assigned less weight to Dr. Simpson's opinion, in part, due to the brief treatment relationship, which did not provide a "longitudinal picture" of Plaintiff's impairments. §§ 404.1527(c)(2), 416.927(c)(2) ("Generally, the longer a treating source has

treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ further cited Dr. Simpson's "minimal support for the extreme limitations she specified" as additional reasons for ultimately assigning Dr. Simpson's opinion little weight. (R. at 30.)

The ALJ thoroughly reviewed the opinions of Drs. Simpson and McCann and adequately explained why these opinions were inconsistent and unsupported by the evidence of record, including Plaintiff's relatively conservative treatment and Plaintiff's reported daily activities, thereby "build[ing] an accurate and logical bridge from the evidence to [the ALJ's] conclusion," allowing the Court to evaluate the decision. *Monroe*, 826 F.3d at 189. Because the ALJ sufficiently explained the weight assigned to the opinions of Drs. Simpson and McCann, and substantial evidence supports the weight assigned, the Court finds no error.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and the final decision of the Commissioner of Social Security be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge Henry E. Hudson.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right**

**to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                       /s/

                                         Elizabeth W. Hanes
                                         United States Magistrate Judge

Richmond, Virginia
Date: __1.20.2021__